187   351<br>202   570

## Philip Benedick v. Nicholas Benedick, Henry Allison, Adam T. Diehl, Executors of Sarah Striewig and Jacob Koller, Appellants.

*Deed—Delivery—Evidence—Question for jury.*

In an action of ejectment the controlling question was whether the deed under which plaintiff claimed title had been delivered. The deed having been lost, the plaintiff, for the purpose of proving its execution, delivery and contents, called the scrivener who had prepared the deed sixteen years before the trial. The scrivener testified that the grantor left the deed with him at the time of its execution, and that, subsequently, she demanded it, and he gave it to her. There was no evidence that it was ever delivered to the grantee. It appeared that, while there was a money consideration named in the deed, yet the real consideration was the support and maintenance of grantor's husband during his life. There was evidence that the grantor did not intend that the deed should take effect until after her death. *Held*, that there was not sufficient evidence of delivery of the deed to justify the submission of the question of delivery to the jury.

Argued May 17, 1898. Appeal, No. 476, Jan. T., 1898, by defendants, from judgment of C. P. York Co., April T., 1897, No. 81, on verdict for plaintiff. Before STERRETT, C. J., Mc-COLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Ejectment. Before W. F. BAY STEWART, J.

At the trial it appeared that on or about April 1, 1881, Sarah Witmyer, the owner of the land in dispute, with Daniel Wit-

myer, her husband, called at the office of William P. Williams, Esq., a justice of the peace, and instructed him to prepare a deed from them to Philip Benedick. The justice prepared the deed, and it was duly executed and acknowledged by them, who instructed him to keep it. Subsequently Mrs. Witmyer demanded the deed from the justice, and it was given to her. Other facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

[If you believe the deed was duly executed and delivered into the hands of Justice Williams to hold without any restraining instructions, then such delivery was sufficient to vest the title to the farm in Philip Benedick, this plaintiff, and so far as this evidence goes it has not shown that the title has been divested, and the plaintiff would be entitled to your verdict. And this would be so without any regard to what the agreement may have contained.] [1]

[The justice testifies that the real consideration for the deed was this understanding or agreement of Philip Benedick to keep and maintain Daniel Witmyer during his life. If you believe this, and you believe further that Daniel Witmyer was provided for on the farm during the remainder of his life, then performance of the conditions of the agreement was entered upon by Philip Benedick, and at the death of Daniel Witmyer it became absolute and he is entitled to recover.] [2]

Plaintiff's points and the answers thereto were as follows:

1. If the jury believe from the evidence that after March 31; 1881, Sarah Striewig, then Sarah Witmyer, with her husband, Witmyer, executed and acknowledged in the usual form, before William T. Williams, Esq., then justice of the peace, in York county, a deed for the land for which this suit is brought, to Philip Benedick, and left it with said justice, without instructions, their verdict must be for the plaintiff for the land described in the writ. *Answer:* This point is not affirmed as written. If the jury believe that the deed was left in the possession of 'Squire Williams without any instructions other than that he should simply hold it, without any restraining instructions, then the law is, as stated in the point. [3]

2. If the jury believe from the evidence that on or about April 1, 1881, Sarah Witmyer and husband duly executed and

acknowledged a fee simple deed for the farm claimed, to Philip Benedick, and left it with 'Squire Williams, without any instructions inconsistent with the idea of a present and absolute conveyance thereby of the title to the plaintiff, and if they believe from the evidence that she intended to then convey title to her brother, the verdict of the jury must be for the plaintiff for the land described in the writ. *Answer :* This point is affirmed. [4]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*James W. Latimer*, with him *George S. Schmidt* and *E. D. Bentzel*, for appellants.—There was not sufficient evidence of delivery for the jury : 2 Jones on Real Property, sec. 1225.

While delivery is usually a question for the jury, yet when there is no evidence of delivery, it is error to submit it : Galbraith v. Zimmerman, 100 Pa. 374 ; 2 Jones on Real Property, sec. 1222 ; Duraind's App., 116 Pa. 93 ; Dayton v. Newman, 19 Pa. 194 ; Critchfield v. Critchfield, 24 Pa. 100 ; Landon v. Brown, 160 Pa. 538 ; Stephens v. Rinehart, 72 Pa. 434.

*H. C. Niles*, with him *George E. Neff*, for appellee.—The delivery is complete when the grantors declare before the officer that they sign, seal and deliver the deed, without saying anything to qualify the delivery. If the grantee be present it is beyond doubt that the title vests ; and no subsequent conduct of the grantor can affect or divest it : Blight v. Schenck, 10 Pa. 285 ; Diehl v. Emig, 65 Pa. 320 ; Emig v. Diehl, 76 Pa. 359 ; Ingles v. Ingles, 150 Pa. 397.

OPINION BY MR. CHIEF JUSTICE STERRETT, July 21, 1898 :

The controlling question in this case is whether there is any evidence of the delivery of the deed in question that ought to have been submitted to the jury. If there was not, it follows that the learned trial judge erred, and the judgment must be reversed.

The deed having been lost, the plaintiff, for the purpose of proving its execution, contents, delivery, etc., called the scrivener who had prepared it about sixteen years before. The witness was old, infirm and of somewhat impaired memory. He

testified as to the preparation of the deed and its execution by Sarah Witmyer and her husband, Daniel Witmyer, and then said: " They (the grantors) refused to take it; said the deed was to remain in my hands, . . . . So I kept the deed. I do not know that there was any time mentioned how long the deed was to remain in my hands. I put the deed away. After that,—how long I don't know—can't say because I didn't keep any account,—the deed remained in my hands. But then, Mrs. Sarah Witmyer one day came to my office and demanded that deed. Well, I handed the deed to her, and she took it along, and that is all I know about it."

On cross-examination the witness testified that while $4,000 was the nominal consideration, the real consideration was a collateral agreement by the terms of which the plaintiff agreed " to keep Daniel Witmyer during life and provide for him, for clothing and boarding, etc. I could not repeat, not for my life, the rest of it; but that was it, as my memory serves, that was in the agreement." The witness further testified on cross-examination that no time was mentioned during which he was to keep the deed. " Q. Pursuant to the instructions you received there, you held that deed and agreement until Mrs. Witmyer came for them? A. Yes, I did. Q. And then you gave them up to her? A. She first fetched the deed; secondly she came again and asked me for the agreement, and I gave it to her. Q. And all that was in pursuance of the understanding you had at the time you wrote it? A. Yes, sir."

Plaintiff's son, Adam Benedick, testified that Mrs. Witmyer said " she had deeded the farm, that in case he (plaintiff) should keep Daniel Witmyer as long as he lived—in case she died before he would, he should keep Daniel Witmyer as long as he lived, and then the farm was his." Henry M. Anstine testified that Mrs. Witmyer said to him that " her brother, the plaintiff, was to have the farm after she was gone," or words to that effect. Ephraim H. Schirey testified that Mrs. Witmyer said " her brother Philip was to have the farm after she was done with it."

This testimony from plaintiff's own witnesses not only fails to show a delivery of the deed, but it clearly establishes the fact that it was not to take effect until the death of Mrs. Witmyer. She not only survived her husband, Daniel Witmyer,

but she married again, and, having survived her second husband, died in 1896. The plaintiff lived on the farm with Mrs. Witmyer until a few months after her second marriage and then moved away. Evidence was offered as to declarations of Mrs. Witmyer to the effect that plaintiff was to have the farm, that she had deeded it to him, etc., but it is neither inconsistent with that above quoted, nor does it not call for extended notice. Apart from the other evidence, there is nothing in it that required submission thereof to the jury. Considered as a whole, we are all of the opinion that the evidence relied on by the plaintiff was insufficient to carry the case to the jury. That delivery of a deed is essential to its validity is a proposition too plain to require argument or citation of authorities. In this case, there was no evidence of delivery, and, of course, the jury could not be permitted to infer that delivery to the scrivener was a delivery to the grantee, because the testimony, as we have seen, is expressly to the contrary. There being no evidence of delivery to the plaintiff, or to any one for him, the question of delivery should not have been submitted to the jury: Galbraith v. Zimmerman, 100 Pa. 374; Duraind's Appeal, 116 Pa. 93. It is unnecessary to consider the effect of the evidence as to the declarations of Mrs. Witmyer the grantor. The witnesses all agree that, as expressed by herself, her intention was that the plaintiff should not have the property until her death. It is not necessary to consider whether the effect of this would be to make the instrument testamentary. It is enough to know that the deed in question was never delivered, conditionally or unconditionally, and that the plaintiff was without evidence on which he could recover in an action of ejectment.

It follows that the learned trial court erred in submitting the case to the jury. Binding instructions to find for the defendants should have been given.

The judgment is accordingly reversed.